# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| JERMAINE C. PLANE, | ) | |
| | ) | No. 13 CV 3832 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Young B. Kim |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | December 15, 2014 |
| Defendant. | ) | |

## MEMORANDUM OPINION and ORDER

Jermaine Plane claims that he is disabled from complications stemming from a gunshot wound to his abdomen. According to Plane, he experiences severe and debilitating abdominal pain on an intermittent basis, rendering him unemployable. On September 22, 2010, Plane filed an application for supplemental security income ("SSI") alleging a disability onset date of November 7, 2006. *See* 42 U.S.C. §§ 416(i), 1382(c). Because the Appeals Council declined to review an administrative law judge's ("ALJ") decision denying Plane's application, Plane brings this action seeking judicial review in federal district court. *See* 42 U.S.C. § 405(g). Before the court are the parties' cross motions for summary judgment. For the following reasons, Plane's motion is granted, the government's is denied, and the case is remanded for further proceedings consistent with this opinion:

## Procedural History

Plane applied for SSI benefits in September 2010, claiming a disability onset date of November 6, 2006. (Administrative Record ("A.R.") 117.) His application was denied on November 16, 2010, and was denied upon reconsideration on December 30, 2010. (Id. 65-68, 71-73.) Subsequently, Plane requested and received a hearing before an ALJ. (Id. 75-79.) The ALJ held a hearing on August 24, 2011, (id. at 96-104), and held a supplemental hearing requested by Plane on November 30, 2011, (id. at 107-115). Following the hearings, the ALJ issued a decision finding that Plane is not disabled. (Id. at 6-19.) The Appeals Council declined review, (id. at 1-3), rendering the ALJ's decision the final decision of the Commissioner. *See Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). Plane initiated this lawsuit on May 23, 2013, seeking judicial review. (R. 1, Compl.); *see* 42 U.S.C. § 405(g). The parties consented to this court's jurisdiction. (R. 6); *see* 28 U.S.C. § 636(c).

## Facts

On June 6, 2010, a bullet struck Plane, entering his abdomen and pelvic cavity. Surgeons performed an emergency exploratory laparotomy and resected part of Plane's intestine to treat the bullet wound, but were not able to remove all of the bullet fragments. One week after he was shot, and on the same day he was released, Plane returned to the emergency room with bouts of intense abdominal pain, nausea, and vomiting. Ever since, according to Plane, the pain has been intermittent but debilitating, occurring multiple times per week, lasting for days, and has prevented him from eating and holding down his jobs. When the pain

becomes especially bad, Plane visits the emergency room where he often receives intravenous pain medication and fluids. Although he has been instructed to follow up with physicians elsewhere for care, Plane does not have insurance and says he is financially unable to do so. According to Plane, he cannot afford private medical care and seeks all of his medical treatment at the emergency room. Plane testified *pro se* at both of his hearings.

## A.    Medical Evidence

Plane's relevant medical history begins with his gunshot wound on June 6, 2010. (A.R. 247.) Since the surgery to treat his gunshot wound, Plane sought treatment in the emergency room at least eight times between June 2006 and May 2011. However, the record does not contain any medical records from November 2006 through April 2009. Seven of Plane's eight documented emergency room visits occurred between May 2009 and May 2011. (Id. at 184, 204, 214, 222, 262, 278, 304.) On June 13, 2006, the same day he was released from the hospital after the shooting, Plane sought treatment from the emergency room at Loyola University Health System ("Loyola") in Maywood, Illinois. (Id. at 248.) Plane reported vomiting a black substance that smelled like fecal matter. (Id.) Based on the discovery of several mildly dilated loops of small bowel in his upper abdomen, physicians diagnosed Plane with a bowel obstruction and abdominal pain. (Id. at 247, 251.)

Although several intervening emergency room visits are referenced in Plane's medical records, (id. at 255-58), in addition to a 2007 operation to remove a small

bowel obstruction, (id. at 180), documentation from visits between July 2006 and May 2009 are absent from the administrative record. Plane's next documented visit to the emergency room was on May 31, 2009. (Id. at 304.) On that date, Plane arrived at Rush-Copley Medical Center ("Rush") in a wheelchair complaining of abdominal pain radiating to his penis and difficulty urinating. (Id. at 308-10.) Plane was treated and then discharged and referred to a primary care physician. (Id. at 313.)

On January 4, 2010, Plane returned to the emergency room at Loyola and described his pain as an "8" on a scale from 1 to 10 but informed the hospital staff that his pain was increasing in intensity. (Id. at 223.) Upon discharge, Plane was instructed to visit Loyola's general medicine clinic for a follow-up appointment. Without having visited the general medicine clinic, Plane was back in the emergency room on July 7, 2010, with another 8-level pain in his abdomen. Medical imaging from this visit revealed a stable dilated small bowel loop in the lower abdomen and a prominent but nonspecific nondilated proximal small bowel loop. (Id. at 218.) Three weeks later, on July 22nd, Plane sought non-emergency follow-up treatment from a general medicine physician at Loyola who referred him to general surgery for a potential operation to correct intestinal adhesions that could be the cause of his pain. (Id. at 180–83.) Whether Plane followed up with this referral is unknown.

On August 14, 2010, Plane was back in the emergency room—this time handcuffed to his bed and under police escort—complaining of abdominal pain.

Treating physicians determined that Plane had chronic but stable symptoms, gave him pain medication, and discharged him with a diagnosis of abdominal pain. (Id. at 189–201.) Just over a month later, on September 21, 2010, Plane was back in an emergency room seeking treatment for abdominal pain. (Id. at 184.) Sometime after his triage consultation, Plane became upset with the length of his wait and left without treatment. (Id. at 184–85.)

The records from Plane's March 29, 2011 trip to the Loyola emergency room note that Plane underwent a bullet extraction surgery on March 4, 2011, but the details of that surgery are absent from the record. (Id. at 262.) During his visit on March 29th, Plane reported acute abdominal pain and nausea. (Id. at 262–64.) Testing revealed dilated loops of small bowel in Plane's lower abdomen that were "suspicious for a small bowel obstruction." (Id. at 265.) Plane was referred to general surgery for evaluation, but the record lacks any documentation as to whether Plane followed up with the hospital's general surgery department.

Finally, on May 27, 2011, a few months prior to his initial hearing before the ALJ, Plane arrived at the Rush emergency room by ambulance and reported intense abdominal pain. (Id. at 278–80.) A CT scan of Plane's abdomen revealed, among other things, a "likely chronic partial obstruction / stricture." (Id. at 290.) Plane was discharged with instructions to follow up with surgeons at Loyola and to bring the imaging from his CT scan with him. (Id. at 291.) The record does not provide any indication that Plane followed up with any surgeons at Loyola as instructed.

The administrative record indicates three medical assessments of Plane, none of which was conducted by physical examination. Two of the medical assessments are pre-hearing assessments. On November 9, 2010, Dr. Reynaldo Gotanco completed a Residual Functional Capacity Assessment ("RFC") for Plane. (A.R. 235.) According to Dr. Gotanco's RFC, Plane's physical condition limited his ability to lift occasionally to 20 pounds and frequently to 10 pounds. (Id. at 236.) The RFC did not impose any other limitations. (Id. at 238.) Ultimately, Dr. Gotanco concluded that Plane's statements about his symptoms were "consistent with impairment and evidence and are considered credible." (Id. at 240.) On December 29, 2010, Dr. Bharati Jhaveri issued a report for Disability Determination Services ("DDS") affirming the initial determination by Dr. Gotanco. (Id. at 243–44.)

On September 14, 2011, a month and a half after Plane's first hearing before the ALJ, the ALJ sought an independent medical opinion from Dr. Laura Rosch through a medical interrogatory. On October 1, 2011, Dr. Rosch opined that Plane's impairments did not meet or equal any impairment described in the Listing of Impairments, and that Plane could handle light work. (Id. at 272–73.)

## B. Plane's August 2011 Hearing Testimony

At the outset of Plane's August 2011 hearing, the ALJ addressed the issue of Plane's *pro se* appearance. The ALJ informed Plane that he had the right to seek attorney assistance and drew his attention to a referral list of potential advocates, including the Cook County Legal Assistance Foundation. (A.R. 43.) The ALJ

informed him that some representation may be entirely free of charge, while other representation may cost him 25 percent of any potential back benefits. (Id. at 44-45.) At the conclusion of his discussion about representation, the ALJ asked Plane directly whether he wanted to proceed, or whether he wanted to delay the hearing to find representation. (Id. at 45.) Plane asked to proceed without representation. (Id.)

During the hearing, Plane articulated the manner in which his symptoms affect his life and his ability to hold a job. Plane testified that his condition causes him to have abdominal pain two to three times per week. (Id. at 52.) According to Plane, the abdominal pain sometimes resolves on its own, but it frequently leaves him feeling "sore" for days to the point that he is unable to eat. (Id. at 52-53.) Other times, when the pain is excruciating, Plane seeks treatment at an emergency room and this occurs once every three to four months. (Id. at 52, 54.)

Work-wise, Plane testified that his condition prevents him from obtaining and keeping a job. In 2006, Plane testified that he was working as a forklift operator for about six weeks until his abdominal condition made him too sick to work. (Id. at 50.) From that moment forward, Plane said that he probably had three other jobs, mostly warehouse-related work, and that he was fired from each of them for absenteeism caused by abdominal pain. (Id. at 54.) One of the jobs Plane had was in forestry, but his abdominal pain caused him to fall ill on an out-of-town work trip and he was promptly dismissed. (Id. at 57-58.)

Plane testified that he attempted to locate a lawyer to help him obtain disability benefits, but had difficulty locating an attorney who would take his case because he lacked documentation from a personal physician that could help him establish his disability. According to Plane, he cannot afford to see a physician other than the emergency room care that he seeks on a periodic basis. (Id. at 59.) The August 2011 hearing lasted approximately 22 minutes from start to finish. (Id. at 42, 62.)

## C. Plane's November 2011 Hearing Testimony

At Plane's request, the ALJ granted him a second hearing that took place on November 30, 2011. Because Plane sought the additional hearing, the ALJ explained to Plane, "I'm not going to go through all the same questions I did last time, and basically, it's kind of like your ball field here." (A.R. 24.) During the second hearing, Plane expressed concerns about the findings of Dr. Rosch, specifically her report that on one of his hospital visits, he did not complain of nausea or vomiting accompanying his abdominal pain. (Id. at 31.) Plane testified that on a number of other occasions, he did have those symptoms when he visited the hospital, and that he frequently vomited at the hospital. (Id.) Plane also objected to Dr. Rosch's characterization of his marijuana use, and the ALJ asked a few follow-up questions on the subject of marijuana. (Id. at 30.) The November 2011 hearing lasted approximately 16 minutes. (Id. at 22, 37.)

**D.      The ALJ's Decision**

On January 26, 2012, the ALJ issued a decision finding that Plane is not disabled within the meaning of the Social Security Act.  (A.R. 6-16.)  Applying the five-step sequence for analyzing disability claims, *see* 20 C.F.R. § 416.920, the ALJ found at step one that Plane has not engaged in substantial gainful activity since his September 22, 2010 application for benefits.  (A.R. 11.)  At step two, the ALJ found that Plane's post-gunshot abdominal pain and cramping caused him "more than minimal functional limitations in the claimant's ability to perform work."  (Id.)  At step three, the ALJ found that Plane's physical impairment does not rise to Listings-level severity.  (Id. at 11-12.)  The ALJ's step-three finding was based on the fact that Plane "does not manifest clinical signs and findings that meet the specific criteria of any of the Listings," and the opinions of DDS medical consultants.

At step four, the ALJ found that Plane's RFC confirmed his ability to perform the full range of light work as defined in 20 C.F.R. § 416.967.  (Id. at 12.)  In making this finding, the ALJ listed several supporting reasons.  Preliminarily, the ALJ noted that Plane's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but then found that Plane's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible.  The basis for the ALJ's credibility determination was that non-examining physicians had determined that Plane was able to perform light work, and that he "described daily activities which are not limited to the extent one would

expect, given the complaints of disabling symptoms and limitations." (Id. at 14.) The ALJ did not address the intermittent nature of Plane's abdominal pain.

Finally, at step five, the ALJ found that Plane is not able to perform any past relevant work, but that there are many light unskilled occupations in the national economy that he can perform. (Id. at 15.) Based on these findings, the ALJ concluded that Plane is not disabled and denied his application for SSI. (Id.)

## Analysis

Now represented by counsel, Plane challenges several aspects of the ALJ's decision in his motion for summary judgment. Specifically, Plane argues that the ALJ failed to develop a full and fair record in light of his status as a *pro se* claimant, that the ALJ failed to explain why his allegations were not credible, and that the ALJ made an erroneous RFC determination.

This court's role in reviewing the ALJ's decision is "extremely limited," and asks only whether the ALJ's decision is supported by substantial evidence. *See Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). An ALJ will meet the substantial evidence standard so long as the ALJ relied on adequate record evidence and explained "why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). The aim of the district court is not to "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder*, 529 F.3d at 413. Instead, the court will affirm the ALJ's decision "even if reasonable minds could differ" as to whether Plane is disabled. *See Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009).

**A.      The ALJ's Duty to Create a Full and Fair Record**

Plane first argues that the ALJ failed to discharge his duty to create a full and fair record. The Seventh Circuit has explained that ALJs do indeed have a duty to develop a full and fair record for social security claimants, a characteristic that distinguishes these administrative hearings from ordinary adversarial litigation. *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000). Where an ALJ fails to perform this duty adequately, remand is appropriate. *Id.* However, the ALJ's obligation to develop the record is not limitless; rather, it is circumscribed within the bounds of practicality and judicial economy. *See Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014) (rejecting an argument that because an ALJ could have ordered an additional medical test, the record was not fully developed).

Relying on *Smith* and *Thomas*, Plane characterizes the ALJ's duty to develop the record as "enhanced" because he appeared *pro se* at the hearings, meaning that the ALJ owed him a duty to "'scrupulously and conscientiously . . . probe into, inquire of, and explore for all the relevant facts.'" *See Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009). In response, the Commissioner argues that the controlling case for the ALJ's duty to develop the record is *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994), and that because Plane does not challenge his waiver of representation, he carries the burden to prove that the ALJ did not fully and fairly develop the record. (R. 24, Govt.'s Br. at 5.) In *Binion*, the Seventh Circuit explained that "[t]he ALJ's duty to develop the record fully and fairly where the claimant proceeds without counsel is met if the ALJ probes the claimant for possible

disabilities and uncovers all of the relevant evidence." *Binion*, 13 F.3d at 245. The Commissioner argues that the cases cited by Plane are distinguishable because they dealt with invalid waivers of representation. (R. 24, Govt.'s Br. at 6-7.)

The Commissioner is correct that Plane does not challenge the adequacy of his waiver of the right to obtain counsel and, therefore, it is Plane's burden to establish that the ALJ failed to develop a full and fair record. Nevertheless, as the *Binion* court made clear, the ALJ still "has the same duty to develop the record when a plaintiff is without counsel regardless of whether the plaintiff's waiver of counsel was valid." *Binion*, 13 F.3d at 245.

Plane argues that the ALJ's questioning of him was "perfunctory" and inadequate to meet the required minimum standard. (R. 18, Pl.'s Br. at 7.) To make his point, Plane provides an accounting of things that the ALJ failed to accomplish. Namely, Plane argues that the ALJ "did not question [him] regarding any of the factors that were listed in SSR 96-7p and required as part of the ALJ's [credibility] analysis," "did not question [him] as to any medication or other measures that he took to treat his pain," and "did not question [him] regarding any treatment that he received between the alleged disability onset date and May 2009, the earliest treatment note in the record." (Id.) Plane also argues that the ALJ had a duty to "question [him] regarding any potential weight loss." (Id. at 8.)

To establish that these failures deprived him of a full and fair hearing, Plane cites to a number of cases, among them *Hull v. Colvin*, No. 11 CV 6589, 2013 WL 3771230, at *6 (N. D. Ill., Jul. 17, 2013) (remanding the ALJ's decision for failure to

develop a full and fair record that would allow meaningful judicial review after the claimant's waiver of representation was found to be invalid), *Henderson v. Barnhart*, 205 F. Supp. 2d 999, 1010 (E.D. Wis. 2002) (remanding the ALJ's decision in light of a claimant's invalid waiver of representation because the hearing was "perfunctory" and did not address the claimant's pain), and *Harris v. Barnhart*, 219 F. Supp. 2d 966, 974 (E.D. Wis. 2001) (remanding the ALJ's decision because the claimant's representation waiver was invalid and the ALJ made "deficient" inquiries into several key areas). But the cases cited by Plane are less applicable here because, as noted before, he does not challenge the validity of his waiver of the right to counsel. Plane's contention that the ALJ should have asked him about weight loss is a nonstarter because the ALJ did ask Plane about his weight, (A.R. 47), and gave Plane several opportunities to raise additional issues, (id. at 51–52, 58). Although Plane proceeded without counsel, "the burden to prove disability remains the claimant's at all times." *Smith*, 231 F.3d at 437. And even though Plane's hearings were brief, it is always possible for an ALJ to do more, and so the question is not whether more could have been done, but whether enough was done. *See Thomas,* 745 F.3d at 807. In addition to the colloquy about Plane's right to obtain counsel, the ALJ covered Plane's personal circumstances, his work history, his symptoms, including pain, and his treatment at Loyola and Rush, and various other subjects relevant to Plane's disability claim. (A.R. 47-50, 51-60.) On the scope of the ALJ's questioning, Plane is essentially arguing against the Seventh Circuit's teaching in *Thomas*, 745 F.3d at 807, that it is insufficient to say that the ALJ could

have done more. For that reason, Plane's argument that the scope of the ALJ's questioning was inadequate fails.

Plane also argues that the ALJ did not give him a full and fair hearing because the ALJ failed to secure certain medical records. This challenge is a serious one. As a preliminary matter, the mere absence of some medical records is not, without more, sufficient grounds for remand. *See Johnson v. Barnhart*, 449 F.3d 804, 808 (7th Cir. 2006) (refusing to fault an ALJ for *pro se* litigant's missing medical records). Instead, "a significant omission is usually required" to support a remand on the basis of missing medical records. *Luna v. Shalala*, 22 F.3d 687, 692 (7th Cir. 1994). Indeed, the regulations state that it is the ALJ's responsibility to "develop [a claimant's] complete medical history" for at least the 12 months preceding the claimant's filing of a disability claim. 20 C.F.R. § 416.912(d).

Here, the ALJ did not obtain or consider records relating to Plane's surgery to remove the scar tissue from his bullet wound, despite reference to this laparotomy procedure. (A.R. 60, 180). And during the August 2011 hearing, Plane referenced a 2008 visit to Rush during which the physicians told him that he needed another surgery. (Id. at 60.) That record falls within the nearly two-and-a-half year gap in Plane's medical records, but as far as the court can tell, the ALJ made no effort to fill in that gap with what might be relevant and significant records.

Still, the court cannot conclude that this case should be remanded based on the ALJ's failure to secure certain medical records. In addition to the fact that Plane bears the burden of proof on the ALJ's development of the record, he also

assured the ALJ that all the records were present. (Id. at 35 ("Yeah, everything is there").) In the same vein, although the ALJ's failure to obtain the 2011 bullet extraction records falls within the ambit of 20 C.F.R. § 416.912(d), this omission does not itself warrant remand because Plane himself testified that the 2011 surgery to remove a bullet fragment was unrelated to his abdominal pain. (A.R. 51). In any event, because this case is remanded for the reasons that follow, the ALJ will have another opportunity to gather the missing records. To the extent that Plane's current attorney continues to represent him on remand, he may be able to facilitate the record gathering needed to fill in the gap highlighted here more expeditiously.

## B.    Plane's Credibility

Plane's best argument challenges the ALJ's credibility determination. In a proper credibility analysis, "an ALJ must consider several factors, including the claimant's daily activities, [his] level of pain or symptoms, aggravating factors, medication, treatment, and limitations." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) (remanding a claimant's case because the ALJ failed to adequately explain an adverse credibility determination). Chiefly, Plane challenges the ALJ's determination that his physical impairments do not preclude him from all competitive work. (R. 18, Pl.'s Br. at 10–11.) The ALJ found that Plane's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible" because they conflicted with his RFC determination for

light work.  In his decision, the ALJ explained why he found against Plane on the issue of credibility:

> Although the claimant has received treatment for the allegedly disabling impairment, that treatment has been essentially routine and/or conservative in nature and the claimant has not taken any prescribed medications for those symptoms.  The claimant has also described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. However, I have considered the claimant's allegations of abdominal pain and have limited him to light work.

(A.R. at 14.)

As a preliminary matter, Plane is correct that when ALJs determine that a claimant is not credible based on contrary evidence, they are required to identify evidence that led to that decision.  (R. 18, Pl.'s Br. at 10, citing *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).)  Plane is also correct that in cases where the ALJ denies benefits, it is the obligation of the ALJ to demonstrate the logical connection between the evidence in the record and the conclusion that benefits are not warranted.  *Id.*  And when "'the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result,' [the court] cannot uphold the ALJ's determination." *Shramek v. Apfel*, 226 F. 3d 809, 811 (7th Cir. 2000) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

Plane argues that "[t]he ALJ did not explain why he did not believe that [Plane] would have missed several days of work if he suffered from debilitating pain that occurred up to three times each week and lasted for days."  (R. 18, Pl.'s Br. at 11.)  According to the ALJ, he accorded "significant weight" to the opinion of Dr. Rosch that Plane was able to do light work.  (A.R. 14.)  However, while

Dr. Rosch's opinion touches on Plane's physical ability to shop, walk, ride in a car, and accomplish his activities of daily living independently, it does not address his alleged bouts of severe abdominal pain that make him unemployable. (Id. at 270–75.) The ALJ's decision does not address the intermittent nature of Plane's alleged disability, which is the crux of his entire case. Moreover, none of the reasons cited by the ALJ contradict Plane's testimony that he is occasionally permitted to engage in work and recreational activities. Therefore, according to Plane, the ALJ's failure to address the intermittent nature of his disability leaves his analysis unfinished.

Indeed, Plane never testified that he is debilitated all of the time, or in a way that would prevent him from occasionally participating in the activities he described. To the contrary, Plane testified that he is *periodically* disabled by his abdominal pain, sometimes for two to three consecutive days per week, and that the frequency and intensity of these episodes render him disabled. (Id. at 57.) Plane relies on *Halvorsen v. Heckler*, 743 F.2d 1221, 1226 (7th Cir. 1984) for the proposition that ALJs must consider un-contradicted testimony of claimants who have lost prior jobs. In *Halvorsen*, the Seventh Circuit remanded a case in which the ALJ determined that a claimant's demonstrated ability to hold several jobs longer than the two-to-three month intervals between her seizure episodes foreclosed the claimant's ability to prove that she had not engaged in substantial gainful activity. *Id.* at 1224, 1226. The lesson from *Halvorsen* is that "the mere holding of a job for brief and intermittent periods" does not establish an ability to sustain substantial gainful employment. 743 F.2d at 1227. That lesson applies

here where Plane testified that the reason he lost all of the four jobs he obtained was the onset of debilitating abdominal pain. (Compare A.R. 12-13 with id. at 54.) The ALJ's failure to at least address the issue of intermittency casts doubt on the thoroughness and logical underpinnings of the ALJ's credibility analysis.

Similarly, the ALJ's decision mentions in passing that one of the reasons for the adverse credibility determination is that Plane's treatment was "essentially routine and/or conservative." (A.R. 14.) But the Seventh Circuit has explained that "such evidence should not negatively affect an individual's credibility if there are good reasons for the failure to complete the plan." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014). Plane's medical records also show that he was referred for surgery on several occasions, but he explained that he was not able to follow up for such treatment because he was unable to afford to do so, and the ALJ did not elicit or obtain any evidence to the contrary. (A.R. 59.) The ALJ did not explain why he had any reason to disbelieve Plane's testimony about his financial inability to follow through with more aggressive treatment, and his failure to grapple with that testimony renders his analysis of Plane's course of treatment incomplete. *See Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) (noting that "the ALJ must not draw any inferences about a claimant's condition" from his failure to seek treatment "unless the ALJ has explained the claimant's explanations as to the lack of medical care" (internal quotations omitted)).

Finally, the ALJ's reasoning that no medical evidence supported Plane's disability is inadequate. In *Villano*, an ALJ found a claimant's purported inability

to sit not credible because "no medical evidence supported such a limitation." *Villano*, 556 F.3d at 562-63. In its rejection of the ALJ's credibility determination, the Seventh Circuit noted that "a lack of medical evidence alone is insufficient reason to discredit testimony," and went on to fault the ALJ for ignoring the claimant's testimony about frequent crying spells that she suffered as a result of her depression. *Id.* (citing *Clifford v. Apfel*, 227 F.3d 863, 871-72 (7th Cir. 2000); SSR 96-7p, 1996 WL 374186, at *6 (1996)). Here, neither the ALJ nor any of the medical experts paid any attention to the central thrust of Plane's disability claim—that the pain occurs often enough to prevent him from maintaining employment. Because Plane's chief complaint is episodic pain, his ability to swim or to play basketball does not undermine his complaints of intense abdominal pain at frequent but irregular intervals. The ALJ simply ignored this aspect of Plane's disability claim, and this case must be remanded to correct that error.

Plane also challenges the ALJ's determination on the additional ground that it contained "boilerplate" language. (R. 18, Pl.'s Br. 14–15.) It is true that the Seventh Circuit has repeatedly criticized ALJs for employing boilerplate language in their credibility determinations. *See, e.g., Bjornson v. Astrue*, 671 F.3d 640, 644-45 (7th Cir. 2012) (referring to language nearly identical to the ALJ's language in this case as "meaningless boilerplate"); *see also Martinez v. Astrue*, 630 F.3d 693, 696 (7th Cir. 2011) (criticizing an ALJ's determination as "perfunctory" because it contained—with scant elaboration or factual support—boilerplate language similar to the language identified by Plane). Nevertheless, an ALJ's use of boilerplate

language does not itself warrant a remand "[i]f the ALJ has otherwise explained his conclusion adequately." *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012). As this opinion has already made clear, the ALJ failed to adequately support his credibility determination with specific evidence from the record. Because the ALJ's use of boilerplate language is meaningless, it does not provide independent support for the credibility assessment, and the court disregards it.

Plane's final challenge to the ALJ's credibility determination is that it conflicts with the credibility finding of Dr. Gotanco. (R. 18, Pl.'s Br. at 14.) Plane points to a portion of Dr. Gotanco's opinion in which he wrote "[Plane's] statements are consistent with impairment and evidence and are considered credible." (A.R. 240.) The Commissioner responds that Dr. Gotanco's report was generated in November 2010, nearly a year before Plane's hearing before the ALJ, and that Dr. Gotanco's assessment of Plane's credibility "was not referring to Plaintiff's subjective complaints asserted during the 2011 hearings." (R. 24, Govt.'s Br. at 10.) As previously discussed, the central problem with the ALJ's reliance on medical opinions, including Dr. Gotanco's, is that the physicians, the ALJ, and Plane are all talking past one another, resulting in a complete failure to address the issue about whether Plane's intermittent but severe pain episodes render him disabled. But on remand, the ALJ should explain more clearly why he disagrees with the consulting expert's view that Plane's description of his symptoms is consistent with and credible in light of the medical record.

**C.    Plane's Residual Functional Capacity**

Plane also challenges the ALJ's RFC determination that he is able to perform the full range of light work.  In order to determine an individual's RFC, "the ALJ must consider all of the relevant evidence in the record, 'even [limitations] that are not severe, and may not dismiss a line of evidence contrary to the ruling.'"  *Murphy*, 759 F.3d at 818 (quoting *Villano*, 556 F.3d at 563).  So long as the ALJ's decision is supported by substantial evidence, it will be upheld.  *Pepper v. Colvin*, 712 F.3d 351, 361-62 (7th Cir. 2013).

Plane argues that the ALJ "erred when he failed to explain why he did not include any limitations with regard to reaching or lifting." (R. 18, Pl.'s Br. at 9.)  On this point Plane appears to be partially mistaken.  As the Commissioner points out, the ALJ determined that Plane's impairments "affect his ability to lift and reach," and limited Plane to light work.  (A.R. 12.)  Furthermore, with respect to lifting, light work is defined by 20 C.F.R. § 416.967(b), limiting lifting to no more than 20 pounds or carrying more than 10 pounds.  But lifting and reaching are different abilities and have different limitations, so by finding that Plane has the ability "to perform the full range of light work as defined in 20 CFR 416.967(b)," the ALJ placed no restriction on Plane's reaching, despite acknowledging that Plane's reaching ability is impaired.  (A.R. 12.)  The Commissioner argues that Dr. Gotanco did not place any reaching limitations on Plane.  (R. 24, Govt.'s Br. at 8.)  That is true, but Dr. Gotanco's opinion is of little consequence where, as here, the ALJ found that Plane's gunshot wound *does* impede his ability to reach.  (A.R. 12.)

Therefore, the ALJ's RFC determination is inconsistent with his findings of fact. The ALJ will also have an opportunity to correct this error on remand.

## Conclusion

For the foregoing reasons, Plane's motion is granted, the Commissioner's is denied, and the case is remanded for further proceedings consistent with this opinion.

**ENTER:**

Young B. Kim
**United States Magistrate Judge**